UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD DODD, <br><br> Plaintiff, <br><br> v. <br><br> DAVID LEONARD, <br><br> Defendant. | CAUSE NO. 3:20CV138-PPS/MGG |

OPINION AND ORDER

Richard Dodd, a prisoner without a lawyer, filed an amended complaint against Administrative Assistant #1 David Leonard. ECF 22. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On August 22, 2017, Dodd was transferred from the Pendleton Correctional Facility to the Westville Correctional Facility. ECF 22 at 2. After his transfer, he was hired as a law clerk in the law library in mid-October 2017. *Id*. Shortly thereafter, he filed his complaint in *Dodd v. Zatecky*, 1:17-CV-3955 (S.D. Ind. filed Oct. 27, 2017). *Id*. at 3. As the case proceeded, Dodd alleges he "suddenly found himself in hot water" because Administrative Assistant Leonard, who works for the prison's Warden,

engaged in various forms of retaliation to thwart him from exercising his First Amendment rights. *Id*. at 2-3.

Dodd alleges that Leonard initially retaliated against him on December 8, 2017, when Leonard targeted Dodd for a shakedown of his cell. *Id*. at 3. During the search of Dodd's cell, prison officers found another inmate's plea agreement and Dodd was written up on disciplinary offense, B-215, for unauthorized possession of state property. *Id*. If found guilty of the offense, Dodd would lose his law clerk job and he would not be able to participate in the prison's legal secretary certificate program, completion of which would reduce his sentence by six months. *Id*.

Dodd's disciplinary hearing was held on February 2, 2018, where the B-215 offense was reduced to a C-353 offense, which prohibits unauthorized possession of personal property. *Id*. at 3, 5. The disciplinary hearing officer found Dodd guilty of the C-353 offense because Dodd had not been in trouble for about five years and the B-level offense seemed a bit harsh. *Id*. The C-level conviction allowed Dodd to retain his law clerk job and remain in the legal secretary certificate program. *Id*. The law library supervisor told Dodd he was eligible to return to his law clerk job in the library and Dodd told her he would like to return to the job. *Id*. The supervisor of the legal secretary certificate program worked with the law library supervisor to get Dodd reenrolled into that program. *Id*. However, Dodd asserts both supervisors engaged in "fighting and arguing" with Leonard on February 3, 2018, over Dodd's eligibility to return to his job and participate in the legal secretary certificate program despite prison policy indicating he was eligible for the job and program. *Id*. at 5.

2

As I noted in my order screening Dodd's original complaint, a number of his allegations concern events that occurred more than two years before he filed his original complaint, and therefore are untimely. ECF 15 at 3-4. "Indiana's two-year statute of limitations . . . is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983." *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 894 (7th Cir. 2001). Because Dodd signed his original complaint on February 10, 2020, any claims accruing prior to February 10, 2018, are barred by the applicable statute of limitations. ECF 15 at 4. As such, Dodd's allegations that Leonard retaliated against him when he ordered the December 8, 2017, shakedown of his cell and had him charged with a disciplinary offense, which he was found guilty of on February 2, 2018, are time barred. And his allegation that Leonard retaliated against him on February 3, 2018, when Leonard argued with the law library and legal secretary certificate program supervisors about his eligibility for the law clerk job and legal secretary program is also time barred.

Dodd argues Leonard engaged in other retaliatory acts that were motivated by his filing of his complaint in *Zatesky* and those acts also violated his constitutional rights. "To prevail on his First Amendment retaliation claim, [Dodd] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). "A complaint states a claim for retaliation when it sets

3

forth a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (quotation marks omitted).

Dodd avers Leonard retaliated against him by administratively removing him from his law clerk position on March 8, 2018. ECF 22 at 3, 6. However, as I noted in my order screening his original complaint, Dodd has not explained how Leonard's March 8, 2018, decision to administratively remove him from his law clerk position was linked or connected to Dodd filing a complaint in *Zatesky*. ECF 15 at 4. In other words, there appears to be no connection between Dodd's October 2017 filing of a complaint in a case against the Warden and prison staff at the Pendleton Correctional Facility and the actions Leonard, who is an administrative assistant at the Westville Correctional Facility, took five months later. *Id*. Dodd was granted an opportunity to address this deficiency, but he has not sufficiently pled facts in his amended complaint that support this claim. Furthermore, while Dodd asserts that his constitutional rights were also violated when Leonard administratively terminated from his law clerk job, a prisoner does not have a liberty or property interest in a prison job and thus the deprivation of that job does not violate his Fourteenth Amendment procedural due process rights. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000).

Dodd next asserts that Leonard retaliated against him on March 20, 2018, when Leonard granted his February 13, 2018, disciplinary appeal and recharged Dodd with the higher level B-215 offense. ECF 22 at 3, 6. He speculates Leonard granted his appeal of the C-353 offense for the sole purpose of recharging him with the higher-level B-215 offense so that he would be terminated from his law clerk job and legal secretary

4

certificate program. *Id*. However, Leonard granting Dodd's appeal cannot be plausibly motivated by Dodd filing his complaint in *Zatecky* because Dodd asked to have the disciplinary conviction overturned. ECF 22 at 3. Though Dodd was recharged, his constitutional rights were not violated because double jeopardy does not apply in prison disciplinary cases. *Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir. 1996).

Dodd also speculates that Leonard retaliated against him because he assigned the chairperson of the conduct adjustment board to hear his case so that Dodd would be convicted of the B-215 offense. ECF 22 at 6. On March 28, 2018, Dodd was found guilty of the B-215 offense and sanctioned with a loss of thirty days earned credit time that was initially suspended, but later imposed. *Dodd v. Warden*, 3:19-CV-312-DRL-MGG (N.D. Ind. filed Apr. 22, 2019). Dodd filed a habeas corpus petition challenging the finding of guilt and sanctions; however, his petition was denied on April 21, 2020. *Id*. Dodd has not alleged, nor can it be plausibly inferred, that the sanction regarding his disciplinary conviction has been vacated on appeal, set aside, or otherwise called into question. Unless and until that occurs, he cannot pursue a § 1983 claim that would undermine the validity of his March 28, 2018, disciplinary hearing. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

Dodd next contends that Leonard retaliated against him and violated his constitutional rights when he was moved eight or nine times to dorms where there was gang violence. ECF 22 at 6. He believes that each move was done in an attempt to get him into trouble. *Id*. at 4. Dodd asked his case worker why he was being moved so much and she told him that was how "Westville treated inmates who file[d] lawsuits"

5

and they "make their time [at Westville] very hard." *Id*.  However, while Dodd speculates that Leonard was responsible for moving him to the different dorms, even if he is correct, Dodd has not plausibly explained how Leonard's actions are connected or linked to Dodd's filing of his complaint in *Zatesky*.  While the case worker's comment is troubling, Dodd has not pled facts that support a reasonable inference that the comment refers to Leonard. Additionally, Dodd's constitutional rights were not violated when he was moved because "[p]rison officials have broad administrative and discretionary authority over the institutions they manage." *Westerfer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2021) (quotation marks, brackets, and citations omitted). Prison officials must afford inmates their constitutional rights, but where to house an inmate is the type of decision that is squarely within the discretion of prison officials.

Dodd further avers that Leonard not only retaliated against him but also violated his constitutional rights by subjecting him to phone and commissary restrictions despite the fact he was never given a conduct report. ECF 22 at 5, 6.  While Dodd alleges that Leonard was responsible for imposing the phone and commissary restrictions, even if he is correct on this point, he has not plausibly explained how Leonard's actions were linked to Dodd's filing of his complaint in *Zatesky*.  To the extent Dodd asserts his constitutional rights were violated because he had phone restrictions, temporary restrictions on visitation do not give rise to a constitutional claim. *Block v. Rutherford*, 468 U.S. 576, 586-87 (1984). As to Dodd's commissary restrictions, there is no federally protected liberty interest in the loss of privileges. *See Hoskins v. Lenear*, 395 F.3d 372, 374-

6

75 (7th Cir. 2005) (prisoner not entitled to process for discipline of two months in segregation, the loss of prison job, the loss of privileges, and a transfer).

Finally, while Dodd claims that Leonard retaliated against him and violated his constitutional rights because he was responsible for deleting his electronic legal file from the law library computer, once again, he has not plausibly explained how such actions are linked to Dodd's filing a complaint in *Zatesky*. ECF 22 at 5. Nor has he alleged that the deletion of his legal file hindered his effort to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 589-590 (7th Cir. 1998), and that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S. 343, 351, (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts); *see also* Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2017).

In sum, Dodd has neither pled facts from which it can be plausibly inferred that Leonard retaliated against Dodd for filing his complaint in *Zatesky* or that he has any independent constitutional claim based on the alleged retaliatory acts. Dodd was given an opportunity to correct the deficiencies in his original complaint by filing an amended complaint, but his amended complaint, despite alleging several additional retaliatory acts, still fails to link those acts to the filing of his complaint in *Zatesky* or to state any independent constitutional claim. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would

be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

    ACCORDINGLY:

This case is **DISMISSED** under 28 U.S.C. § 1915A.

SO ORDERED on June 14, 2022.

                                                /s/ Philip P. Simon
                                                JUDGE
                                                UNITED STATES DISTRICT COURT